SARAH KOPP, Appellant, *v.* BERT BARNES, Respondent.

Second Department, May 31, 1960.

*David Oppenheim* for appellant.

*Robert H. Sterling* (*Harry L. Ettinger* of counsel), for respondent.

NOLAN, P. J.   Appellant brought this action for the return of a payment made on account of the purchase price of real property and for other relief.   Her motion for summary judgment was denied at the Special Term on the ground that there were issues of fact which required a trial.   We find no such issues.

The material facts are not in dispute.   On April 16, 1958 the parties entered into a written contract providing for the purchase and sale of the property, and appellant made a payment of $3,300 on account of the purchase price.   The contract provided that respondent should convey the fee simple of the property free from all incumbrances except as therein stated and that respondent was required to give, and appellant to accept, " a title such as any recognized title company " associated with the New York Board of Title Underwriters would " approve and insure ".   Appellant made application to such a title company for title insurance and was informed by the company that it would not insure title to about 135 square feet of the property included in the contract description and would only insure title to the balance, subject to certain covenants and restrictions.   These covenants and restrictions prohibited the use of the property for certain specified purposes, including the maintenance of a factory of any kind, and reserved an easement and right of way to erect, construct and maintain pipes, mains, hydrants and other or similar means of supply for water, poles, wires, conduits for electricity, drains, cesspools and similar instruments of sewerage and flushing systems and other " instruments of constructions usual in conduct and/or construction of a public [or] quasi-public utility ", and to enter upon the property " for any of the purposes for which the said easement and right of way are reserved " and for the purpose of repair or " further erection and construction ".   Appellant was also informed by the company that it would except from the coverage of its insurance policy all loss or damage by reason of the defects, objections and incumbrances noted which were not disposed of to its satisfaction prior to the closing of title or the issuance of its policy.   The contract provided that the property should be conveyed subject to restrictive covenants, conditions, agreements and easements of record, if the same did not render title unmarketable.

The closing of title was twice adjourned so that respondent might discuss the exceptions with the title company, and, prior to the final date agreed upon, appellant through her attorney notified respondent's attorney in writing that she would attend at his office prepared to carry out the terms of the contract and would demand strict performance on the part of the seller. On that date respondent tendered a deed, and appellant tendered the balance of the purchase price and demanded conveyance of title in compliance with the terms of the contract, free and clear of incumbrances except as recited therein. Appellant rejected the deed tendered by respondent because of the defects and incumbrances, heretofore mentioned, and for the further reason that the title company had refused to delete from its title report and proposed policy the exceptions hereinbefore referred to. Respondent did not request any further adjournment of the closing to perfect his title or offer to convey title in accordance with the contract at any future time. Thereupon appellant elected to terminate the contract and demanded the return of the payment which she had made. This action followed respondent's failure to comply with her demand.

Appellant's motion for summary judgment was opposed by respondent who asserted through his attorney that no opportunity had been given him on the closing to obtain or consult with another title company to ascertain whether title insurance could be obtained without the exceptions noted by the company to which appellant had made application, that at no time during the closing, as disclosed by minutes kept, had appellant's attorney asked the title company's representative to omit the exceptions, that the covenants, restrictions and easements noted by the title company no longer affected the property on the date set for closing, and that the title company was consequently in error in reporting them as incumbrances. Respondent contended, on the basis of the foregoing, that whether the title company erred in its report, whether it had the right to raise the objections which formed the basis for appellant's rejection of title, and whether appellant had a right to reject title, were matters which should be decided only after a trial. Similar arguments are presented on this appeal. We see no necessity for a trial to determine the issues suggested or any other issue of fact in this action.

Respondent's arguments are based on a misconception of the legal effect of his agreement to furnish a title which a title company would approve and insure. Having agreed to furnish such a title, he was required at the closing to tender a title to the property described actually approved by a qualified company without exceptions other than those contemplated by the con-

tract. The procurement of such approval was a condition precedent to the right to require performance by appellant. Having presented proof that the title company, to which she made application for insurance, had refused to insure title unless subject to the exceptions noted, appellant was not required to prove that no title company associated with the New York Board of Title Underwriters would insure the title without such exceptions. It was incumbent on respondent, who had assumed that burden, to establish that he had met the condition imposed by his contract, and, having defaulted in such proof, he had no defense to the motion for summary judgment. (Cf. *Flanagan* v. *Fox*, 6 Misc. 132, affd. 144 N. Y. 706; *New York Investors* v. *Manhattan Beach Bathing Parks Corp.*, 256 N. Y. 162; *Friedman* v. *Handelman*, 300 N. Y. 188; *Salvin* v. *Wiedemann*, 276 App. Div. 454; *Gilchrest House* v. *Guaranteed Title & Mtge. Co.*, 277 App. Div. 788, affd. 302 N. Y. 852; *Dukas* v. *Tolmach*, 2 A D 2d 57.) Consequently, respondent's contention that appellant did not request on the closing that the title company's exceptions be omitted and that the record does not disclose a refusal by the representative of the company to insure title on the closing date tenders no issue for determination (cf. *Salvin* v. *Weidemann, supra*, p. 455) nor is it material whether the refusal of appellant's title company to insure title was erroneous or unreasonable (cf. *Flanagan* v. *Fox, supra*, p. 135). Neither is a trial required to determine whether the restrictive covenants and reservations excepted by the title company rendered respondent's title unmarketable. Of course, appellant would have been entitled to prevail at the Special Term if she had established beyond question that title to the property to be conveyed was unmarketable by reason of the defects in title noted in the title report. She was not required, however, to go that far. She established beyond question that the title company, to which she had applied for insurance and which concededly met the contract requirements as to qualifications, had declined to insure title, free and clear of the incumbrances and defects which it had reported. If in fact the property was subject to the incumbrances noted, there could be no doubt that respondent's title was unmarketable (cf. *Bull* v. *Burton*, 227 N. Y. 101, and cases cited on p. 111; *Friedman* v. *Handelman*, 300 N. Y. 188, 193, *supra*). Respondent, however, could not avoid liability by proof that the property was not subject to the incumbrances. What he was required to prove was that a qualified title company would insure title free and clear of them, and the record is devoid of such proof. It is true that no further adjournment of the title closing was offered by

appellant, prior to the termination of the contract, to permit respondent to obtain approval of his title from another title company. No reason appears, however, why such an offer should have been made. Minutes were kept of the proceedings on the final closing date, and their accuracy is not questioned. They clearly disclose that no objection was made by respondent to appellant's demand for strict performance on his part on that date and that, although he had been informed of the exceptions noted by the title company, respondent nevertheless tendered a deed, without requesting, or even suggesting, a further adjournment or offering to obtain the required approval of his title at any future time. It is equally clear from the record that respondent made no effort to obtain approval of his title by any other title company, and no proof was offered that such approval could have been obtained, free and clear of the incumbrances noted, if a further adjournment had been obtained. Appellant was not required to accept the deed which was tendered nor, in view of the tender of performance by respondent, to offer or suggest a further adjournment. Moreover, respondent, having sold the property to a third party, was unable to perform his contract with appellant, when the motion for judgment was made. Appellant has sufficiently established that she was ready, willing and able to perform her contract and tendered performance and that respondent is in default.

The order should be reversed, with $10 costs and disbursements, the motion should be granted, with $10 costs, and judgment should be directed in favor of appellant in accordance with the contract for the amount of the payment made and the net cost of examining the title, with interest and costs. If the parties are unable to agree as to the cost of examining title, such cost should be determined as provided in rule 113 of the Rules of Civil Practice. The order should be settled on notice.

KLEINFELD, CHRIST, PETTE and BRENNAN, JJ., concur.

Order reversed, with $10 costs and disbursements, motion granted, with $10 costs, and judgment directed in favor of appellant in accordance with the contract for the amount of the payment made and the net cost of examining the title, with interest and costs. If the parties are unable to agree as to the cost of examining title, such cost is to be determined as provided in rule 113 of the Rules of Civil Practice. Settle order on notice.